## COMMONWEALTH TRUST CO. OF PITTSBURGH et al. v. ATWOOD. *
### No. 5518.

Circuit Court of Appeals, Third Circuit.
April 5, 1935.

Rehearing Denied May 22, 1935.

BUFFINGTON, Circuit Judge, dissenting.

William A. Wilson, of Pittsburgh, Pa., for appellants.

John G. Frazer, Robert L. Kirkpatrick, and Smith, Shaw, McClay & Seifert, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

In good times the Bank of Pittsburgh National Association, hereinafter called the bank, purchased mortgages on real estate and, under authority of the Pennsylvania Act of April 6, 1925, P. L. 152 (see 15 PS Pa. § 2514), placed them in a general trust fund commonly known as a mortgage pool, segregated from its other assets and held by it as trustee. In this pool, under authority of the same Act, it invested trust funds and sold shares to outsiders, in all instances represented by certificates of participation in different denominations which indicated the portions of interest and principal of the fund to which the certificate-holders were entitled. In this way the bank supplied its customers and its trusts with attractive investments and recovered most of the original cost of the mortgages.

At the time in question the aggregate face value of the mortgages so held was $5,347,585.57 and the aggregate of the certificates of participation outstanding was $5,056,565.12. Thus the mortgages exceeded the certificates by $291,020.45. As the trust department of the bank, which operated the pool, had not sold certificates or invested trust funds in certificates covering this amount, it had not turned back any part of it to the bank. Yet it held in the pool this excess of mortgages purchased with the bank's money.

In operating the pool the trust department collected interest on the mortgages and quarter-annually paid the certificate-holders interest at a named rate and also paid interest to the bank on the amount in which the face value of the pool ex-ceeded the sum of the certificates issued. Bad times came and mortgagors defaulted on their interest payments. In consequence it was impossible to pay full interest on the certificates. To relieve the situation temporarily, the bank made advances of its own money to its trust department, aggregating $40,213.58 after certain re-payments, which was disbursed to certificate-holders.

The bank, yielding to the times, failed and was taken over for liquidation by a receiver appointed by the Comptroller of the Currency. Its receiver, for convenience called the bank, desired to be relieved of the custody and administration of the pool. By a proceeding, the lawfulness of which is not questioned, the Orphans' Court of Allegheny County, the bank consenting, appointed Commonwealth Trust Company of Pittsburgh substituted trustee of the mortgage pool with authority to administer the trust. Whereupon the bank assigned and delivered to the new trustee all assets of the pool, including mortgages in excess of certificates.

Under orders of the Orphans' Court the substituted trustee made various payments of interest and principal to holders of participation certificates but made no payment, indeed refused to make payment, of interest or principal to the bank on account of the balance which it claims to hold in the pool, represented by the difference between total mortgage values and the amount of the outstanding certificates, pending judicial determination of the bank's claims. Nor has it reimbursed the bank for moneys which it paid the certificate-holders in relief of interest defaults by mortgagors. Thereupon the bank, through its receiver, filed a bill in the United States District Court for the Western District of Pennsylvania instituting this suit, whereby it sought to have its claim to the excess of the pool in the sum of $291,020.45 and its claim for interest advanced in the sum of $40,213.58 established as claims against the pool, the latter prior in order of payment to claims of holders of certificates of participation. The learned court, by its decree, found the latter sum due the bank and ordered the trustee of the pool to pay it out of available moneys collected on the mortgages. It also found that the bank is a participant and cestui que trust to the amount of the former sum in the mortgage pool and as such is entitled to share proportionately with the holders of participation certificates in all distributions

of interest and principal theretofore and thereafter made, and accordingly ordered the trustee to pay the bank its share of moneys collected and withheld in previous distributions to certificate-holders.

From this decree the substituted trustee of the pool and other defendants, hereinafter called the appellants, appealed, raising several questions of which the first is: Has a federal district court jurisdiction, on the facts of this case, to establish claims of a bank against a mortgage trust being administered by a state court?

It is certain that, so far as the res of the estate now being administered by the Orphans' Court are concerned, the jurisdiction of that court is exclusive. A federal court cannot reach into the state court and take the res or enforce a right to specific property in possession of its receiver or trustee, except upon application to the court which appointed him. Riehle v. Margolies, 279 U. S. 218, 49 S. Ct. 310, 73 L. Ed. 669; Harrison v. Moncravie (C. C. A.) 264 F. 776, 779. It is likewise certain that a federal district court, on jurisdiction otherwise shown, as diversity of citizenship or, as in this case, liquidation of a national bank, may establish "a claim constituting the basis of a right to participate in the distribution of property in the possession of" another court. The judgment of the federal court does not in such case purport to deal with property. Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536. It deals solely with the existence and amount of a claim, Riehle v. Margolies, supra; Harrison v. Moncravie, supra, which when established by decree takes its "share of the estate as administered by the probate court." Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 43, 30 S. Ct. 10, 12, 54 L. Ed. 80, 84; Byers v. McAuley, 149 U. S. 608, 13 S. Ct. 906, 37 L. Ed. 867; Thomas v. Commonwealth Trust Co. (D. C.) 2 F. Supp. 654; Alexander v. Fidelity Trust Co. (C. C. A.) 249 F. 1. Indeed, the appellants do not dispute the right of the bank to have its claims against the mortgage trust, which the Orphans' Court is administering, adjudicated in the federal district court, the forum of its choice. They maintain, however, that establishment of the existence and amount of the bank's claims is the limit of that court's jurisdiction, and dispute strenuously the right of a federal district court or of any court other than the one administering the res to determine the status or fix the rank or priority of a claim on distribution of assets.

There is a marked difference between adjudication of a claim against an estate and payment of the claim on distribution of its assets. The first stands on its own footing; the second turns on its relation to other claims. But the court which has jurisdiction to establish the existence and amount of a claim must necessarily view its characteristics and recognize its status with respect to itself, otherwise it could not "determine and award (the claimant's) share in the estate". Byers v. McAuley, 149 U. S. 608, 13 S. Ct. 906, 37 L. Ed. 867. If one of the fixed legal or equitable characteristics of a claim is a priority, as that of a mortgage claim or a tax claim, the establishment of the existence of the claim establishes also its existing characteristic of limited or general priority over claims of lower rank. So also the establishment of a claim as a secured claim fixes its status below claims of other classes until at least the security is availed of or surrendered. A claim against an estate by right of inheritance, established by a court other than the probate court, involved in one instance not merely its amount but the right of first cousins to take to the exclusion of second cousins. Byers v. McAuley, 149 U. S. 608, 13 S. Ct. 906, 37 L. Ed. 867.

The status of a claim is as much a part of it as the amount. When established, as to its existence, amount and status, the claim, in the instant case, leaves the District Court and enters the probate court where it takes "its place and share of the estate as administered by [that] court." Byers v. McAuley, supra; Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 43, 30 S. Ct. 10, 54 L. Ed. 80, 84; Riehle v. Margolies, 279 U. S. 218, 49 S. Ct. 310, 73 L. Ed. 669.

On these authorities we hold the District Court had jurisdiction of the bill and that it was required to exercise it.

Passing from the question of the court's jurisdiction, the appellants raise the substantive issue whether the bank is a participant or cestui que trust in the mortgage pool to the extent of $291,020.45, the difference between the face value of the mortgages and the face of outstanding certificates, and as such is entitled, as the court held, to share proportionately in any distribution made to holders of participation certificates? Naturally the bank says

it is so entitled. This the appellants deny with the assertion that the bank is not entitled to share in any distribution of the assets of the pool until and unless the holders of all participation certificates have received the face amount of their certificates and interest. The answer to these opposing positions turns on the character of the pool and the undertaking of the trustee and the contractual rights accorded the purchasers of certificates.

In the beginning, when the bank purchased the mortgages, it held both their legal and equitable titles. As from time to time it sold certificates it sold its equitable title pro tanto, retaining the whole legal title and a part of the equitable title. If ever it sold certificates equal to the face of all the mortgages, it held only the legal title and stood as trustee for those holding all of the equitable title. It is common knowledge that a pool of this character never stays at one level. As mortgages are paid and certificates retired, the pool recedes; as more mortgages are purchased and more certificates issued, it rises. It is always fluctuating. But, as in this case, it is always the bank's money that first makes and then replenishes the pool, for certificates could not be sold and issued except against an equal amount of mortgage values. To insure that the pool shall have a safe head at all times, more mortgages are placed in it than certificates issued, making an excess of mortgage values such as the one in question in this case.

■ Recognizing the continuous ebb and flow of values in mortgage pools, the bank and certificate purchasers entered into a contract, which clearly did not give the latter a right to all values in the pool in proportion to their certificate holdings, but made each holder of a certificate "a participant to the extent indicated (by the certificates) in the mortgages held (by the bank) in trust for those of its customers who have purchased participation in said mortgages." By this engagement a purchaser of a certificate acquired, not a promise by the bank to pay the amount of the certificate, nor an undivided interest in the whole pool as from time to time it rose and fell in volume, but a share of the fund measured by the dollars indicated in the certificate.

■ When the pool was in solvent operation and the holder of a certificate wanted his money back, he recovered the same number of dollars he had invested, not dollars reckoned on the relation of certificates to all mortgages. He was entitled to no part of the excess of the latter over the former, for no part of that excess had he ever purchased. It belonged to the bank which had purchased it and to which the bank still held both the legal and equitable title. He was a participant only "to the extent (that is, in the amount) indicated" in his certificate. When as a "participant" he received money to that extent or his share in that amount he had all he contracted for. Mortgage values beyond the values of certificates issued, which the bank purchased with its own money, clearly belong to the bank, and, being the creator and to that extent a participant in the fund, it is entitled to its proportionate share in the proceeds of liquidation.

■ As to the item of $40,213.58 which the bank advanced to the certificate-holders when mortgagors began to default on their interest payments and is now seeking to recover, we hold with the learned trial court that it constitutes a valid debt of the trust and should be repaid the bank before further distributions are made to certificate-holders. Certainly there is nothing in the pool contract by which the certificate-holders could demand that money of the bank or by which, after payment, they were entitled to hold it. It was not a gift. It was a plain advance or loan based on the mistaken hope of better times and a quick return. As the money did not belong to the certificate-holders, it should be returned to the bank from money which otherwise would belong to them. Thus the transaction would balance. No one would gain; no one would lose.

■ We approve the conclusions of law made by the learned trial court on the stipulated facts establishing the several claims of the bank to proceeds of the mortgage pool in liquidation, but are constrained to differ in respect to its orders addressed directly to the trustee appointed by the Orphans' Court to pay certain of them forthwith. As these orders, in practical effect, reach into the estate and grasp the res, against which there may, for ought we know, be claims of higher rank or with priorities, and concerning which certainly the Orphans' Court, first to acquire jurisdiction, is alone authorized under the cited authorities to make distribution and pay the claims here finally adjudged, it becomes necessary that the learned District Court modify the first and third paragraphs of

its decree: the first paragraph by withdrawing its mandate to the trustee, an officer of the Orphans' Court, to pay the bank's claim there established, and the third paragraph by withdrawing a like mandate to the trustee to pay the bank's claims there established, and by giving the claims established in paragraphs 1 and 3 priority of payment over any future distribution of assets to participants in the pool.

When so modified, the decree will in all respects be affirmed.

BUFFINGTON, Circuit Judge (dissenting).

In the present case the bank, as a part of its own business and for its own profit, undertook the administration of a mortgage trust which it created and, in pursuance thereof, segregated mortgages for the protection of the cestuis que trustent, to whom it sold, for its own profit, participation in said trust. In the administration of this trust, the deposited mortgages proved unsufficient to meet the interest requirements of the trust certificates and the bank, voluntarily, and to preserve its own credit, paid some $40,000 to meet the interest shortage. At this point we note the receiver had the right thereafter to invoke the jurisdiction of the local District Court to aid in the liquidation of its affairs. Instead of itself proceeding to liquidate and invoking the jurisdiction of the District Court if required, and desiring to be wholly relieved of the mortgage trusts, the receiver, presumably—if not indeed certainly—with the consent of the Comptroller, voluntarily assigned and handed over all the mortgages it held to secure the cestuis que trustent, to the orphans' court of Allegheny county, which is qualified to administer trusts, and, as stated in the receiver's brief (the italics mine) "thereupon, *with the consent of plaintiff*" (the receiver) "the orphans' court removed the bank as trustee of the mortgage pool and appointed the Commonwealth Trust Company of Pittsburgh as trustee, as successor to the Bank of Pittsburgh, and the *assets of the mortgage pool* were then delivered to the Commonwealth Trust Company." In my view, the receiver, by joining in such application, became a party to the cause in the orphans' court and his rights to the res or any part thereof were submitted to the adjudication of that court, for, as was held

by the Supreme Court in Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co., 177 U. S. 51, 20 S. Ct. 564, 568, 44 L. Ed. 667:

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts' of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons." And, as said in Covell v. Heyman, 111 U. S. 176, 4 S. Ct. 355, 358, 28 L. Ed. 390: "When one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. * * * The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues."

In administering the trust, the orphans' court ordered no payment of interest or principal to the bank, both of the excess mortgages the bank had deposited in the pool and also of the cash which it had voluntarily advanced. In the face of these times of depression, and especially of real estate mortgages, this was a precautionary measure wisely exercised by the orphans' court in its primary duty to the cestuis que trustent who held certificates, issued by the bank, in this mortgage pool, for, as correctly stated by this court in its opinion, "To insure that the pool shall have a safe head at all times, more mortgages are placed in it than certificates issued, making an excess of mortgage values such as the one in question in this case." If the receiver was aggrieved by this nonaction of the orphans' court, his remedy in due course was apparent, namely, to apply to the orphans' court for payment, and if this was denied then to appeal to the higher courts of the state from the orphans' court's decision, and if his rights were federal ones—he states in his bill he is "receiver of a national bank and is therefore a federal officer"—and those rights were denied him, he could ultimately find relief in the Supreme Court of the United States. Instead of resorting to such course, the receiver invoked the jurisdiction of the District Court below and filed his bill praying, inter alia,

"(b) That the right of plaintiff to receive out of the assets comprising the Mortgage Pool the sum of $291,020.45, with interest, and the sum of $40,213.58 with interest, be ascertained and adjudicated by the Court and that the Commonwealth Trust Company of Pittsburgh, Trustee, be directed to pay to plaintiff out of the first funds received by it in connection with the liquidation of the Mortgage Pool, the amounts so adjudicated to be due and payable to it as aforesaid.

"(c) That the Commonwealth Trust Company of Pittsburgh, as Trustee, of said Mortgage Pool, be required to account for all its receipts and disbursements as such Trustee and for all property now in its hands or under its control or held in connection with the Mortgage Pool."

In view of the facts, it would seem clear that every element of comity, consent to the orphans' court jurisdiction, surrender of the res, and possession thereof by the orphans' court, all united to constrain the court below to dismiss the belated bill of the receiver, which in reality was not a bill to ascertain the amount of the bank's claims—for as to the amount thereof there was no dispute—but was filed, as quoted above from its prayers, to oust the jurisdiction of the orphans' court. In my judgment, the bill should have been dismissed, and I am constrained to record my dissent to this court's action in not so doing.