## Media–69th Street Trust Company's Trust Mortgage Pool Case.

Argued January 10, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*V. Gilpin Robinson,* with him *J. H. Ward Hinkson,* for appellants.

*Samuel A. Montgomery,* with him *Raymond E. Larson, Horace M. Barba,* Special Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellees.

OPINION BY MR. JUSTICE BARNES, March 21, 1938:

When the Secretary of Banking on September 30, 1933, entered into possession of the Media–69th St. Trust Company, a closed bank, located in Delaware

County, he assumed charge of a trust mortgage pool that the Company had established. On the date the Trust Company closed, the assets of the pool consisted of 153 mortgages with an aggregate face value of $791,-696.71. Against these assets the Trust Company had issued mortgage participation certificates, which were held by trust estates of which the Trust Company was a trustee.

From the record it appears that it was the practice of the Company, whenever the interest upon the mortgages in the pool was in default, to advance from its general trust funds whatever sum was necessary to pay the interest due certificate holders. There is no evidence that either the co-trustees or the beneficiaries of the estates concerned had knowledge that these payments of income which they received were advancements made by the Trust Company, rather than interest collected upon the mortgages in the pool.

On the day the Secretary took possession of the mortgage pool, the advancements so made to certificate holders were in the sum of $25,002.98. The use of its trust funds for the purpose stated, as well as other diversions of such funds, resulted in an impairment thereof to the extent of $111,509.76 at the time the bank closed.

In January 1934, Frank B. Rhodes, the president of the Company, pursuant to a written agreement, deposited with the Secretary the required sum of $111,-509.76 in cash and securities to restore the depleted trust funds of the Company. This agreement obligated the Secretary to exert reasonable efforts to obtain refunds from certificate holders of the advancements so made. It provided that any balance remaining after the liquidation of all deficiencies in such funds, with the approval of the court, should be returned to Mr. Rhodes. The cash and securities so deposited with the Secretary, rendered the trust department of the Company solvent.

The Secretary continued to act as Receiver of the mortgage pool until September 24, 1934, when the Ches-

ter–Cambridge Bank and Trust Company was appointed substituted trustee, and the Secretary was ordered by the court below to deliver to the substituted trustee all the assets of the mortgage pool. The transfer so directed, except for certain cash items retained by the Secretary, was completed by October 15, 1934, and since that date the trust mortgage pool has been administered by the substituted trustee.

During the period of nearly one year that the Secretary managed the mortgage pool, he collected $27,-832.21 as interest upon the mortgages therein, and of this sum approximately $7,300 represented interest received upon mortgages in arrears, which had theretofore been advanced by the Trust Company to certificate holders.

The Secretary as Receiver of the mortgage pool, filed his first and final account on January 14, 1935. The present appeal involves the right of the Secretary to a credit claimed in the account reading as follows: "Liquidation of overdraft, in Income Cash, 9-30-33 . . . $25,002.98." It is conceded that no such sum was disbursed by the Secretary, but it represents the amount retained from cash on hand as a reimbursement for the above described advancements of interest made by the Trust Company to certificate holders prior to the closing of the bank.

The court below dismissed the exceptions to the credit claimed, and entered a final decree confirming the Secretary's account. From the decree so entered the exceptants, who are the substituted trustee and certain certificate holders, have taken this appeal.

It seems to us that the primary question here involved is whether the Secretary as Receiver of the mortgage pool, in an effort to obtain recoupment for interest advanced by the Trust Company upon mortgages in default, is entitled to withhold income subsequently received from other investments of the mortgage pool.

The learned court below manifestly erred when it permitted the Secretary to retain, from the interest received upon mortgages in the pool, the sum of $25,002.98, which represented all the advancements of interest made to certificate holders. A trustee is under no obligation to advance income to a cestui que trust, and when he does so his right of reimbursement is limited to the income thereafter earned upon the identical investments on which the advancement was made. If the particular interest advanced is subsequently collected, the trustee may obtain reimbursement therefrom, and the transaction is closed. If the particular interest advanced cannot be collected, the transaction remains open, and any loss arising therefrom must be borne by the trustee who volunteered the payment.

The recent decision of this Court in *Klein's Estate,* 326 Pa. 393, is controlling upon the issues here raised, and the well-settled principle upon which that case was determined may be applied to the present case. There it was held that where a trustee makes payment of income from its own funds as if received from particular investments, without notice to or knowledge of the beneficiaries that the income from the investments is in default, it may not thereafter reimburse itself from income subsequently received from other investments of the trust. We said (p. 396) : "Here the advancements made by the Bank were drawn from its own funds. The money which it subsequently received as income from other investments of this estate, was received in its capacity as trustee. The voluntary payments which it had made did not relieve it as trustee from its duty to pay over other income in strict accordance with the terms of the trust." See also *Nauman's Estate,* 110 Pa. Super. Ct. 55.

As the sum of $25,002.98, which the Secretary here seeks to retain, is part of the sum collected by him in the capacity of Receiver of the mortgage pool, he is bound to pay over the amount so collected to the substituted

trustee. The advancements made by the Trust Company to various certificate holders prior to the closing of the Trust Company, give to the Secretary as Receiver no right to claim interest collected upon the mortgages in the pool, other than those upon which default had occurred and for which advances had been made.

While it does appear that the Secretary is entitled to a reimbursement of approximately $7,300 on account of interest collected by him on identical mortgages upon which there had been advancements, it seems to us that the assertion of a claim for refund at this time and in this proceeding is premature. In our opinion the determination of the claims of the various parties in interest may be more adequately considered and their respective rights better protected when the account of the substituted trustee of the mortgage pool is filed.

It is our conclusion that the amount of $25,002.98, for which the Secretary as Receiver of the mortgage pool claims credit in his account, should be disallowed, and that said sum should be paid over by the Secretary as Receiver to the Chester–Cambridge Bank and Trust Company, the substituted trustee of the mortgage pool, pursuant to the amended decree of the court below, dated September 24, 1934, requiring the Secretary to deliver to it "all of the assets in his possession belonging to or in anywise connected with said mortgage trust pool," for accounting and distribution according to law.

The decree of the court below is reversed and the record is remitted for such further proceedings consistent with this opinion as may be proper and necessary. Costs to be paid by appellee.