**COFFEY v. LAWMAN.**
No. 7927.

Circuit Court of Appeals, Sixth Circuit.
Oct. 14, 1938.

246

Charles C. Moore, of Chattanooga, Tenn., for appellant.

J. B. Sizer, of Chattanooga, Tenn. (J. J. Lynch, J. B. Sizer, Lynch, Phillips, Hall & Allison, and Sizer, Chambliss & Kefauver, all of Chattanooga, Tenn., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

For many years prior to December 31, 1932, the First National Bank of Chattanooga, Tennessee, was engaged in the banking business under a Federal charter.

Under the Acts of December 23, 1913, Chap. 6, Section 24, 38 Stat. 273, and September 7, 1916, Chap. 461, 39 Stat. 754, 12 U.S.C.A. § 371, it engaged extensively in the business of making loans secured by lien on real estate, and under the provisions of the Acts of December 23, 1913, Chap. 6, Section 11, 38 Stat. 261, September 26, 1918, Chap. 177, Sec. 2, 40 Stat. 968, 12 U.S.C.A. § 248 (k), national banks under special permit from the Federal Reserve Board were authorized to act as trustees where doing business in states in which state banks could so act. Under Tennessee Code, § 5936, state banks were authorized to act as trustees.

The bank made three to five year real estate loans bearing semi-annual interest. Part of these loans were held in a pool identified "property of holders of participation certificates." The bank sold participation shares therein, maturing three years from date of issue, bearing six per cent interest, payable semi-annually, against which were issued appropriate certificates.

It kept segregated at all times lien notes, some having an interest rate in excess of six per cent and of an aggregate par value equal to the face value of certificates outstanding. It retained the notes and collected both principal and interest, and mingled these funds with collections of its own notes, and paid to the owners of participation certificates, when due, their pro rata share of both, regardless of collections. It received for its services, all interest collected in excess of six per cent, commissions and fees. It also paid insurance and taxes where the mortgagor defaulted.

Because of the depression, difficulties arose, many debtors defaulted and to meet the maturity interest on certificates, the bank advanced $168,268.62 and paid insurance premiums and delinquent taxes of $23,378.53.

On December 31, 1932, the First National Bank transferred a part of its assets to The Chattanooga National Bank and discontinued the banking business. The old bank continued to operate the mortgage pool until January 12, 1933, but made no new loans. It recouped $56,704.37 of its advancements on participation certificates by collections from mortgagors. On January 12, 1933, the State Chancery Court, Chattanooga, appointed it receiver for the participation pool and in April, 1933, E. H. Lawman was by the same Court appointed co-receiver.

On May 16, 1933, the certificate holders filed in the receivership proceedings in the state court a class suit in the nature of an original action, seeking to remove the bank as co-receiver and recover from it damages for maladministration of its trust. The bank was removed as co-receiver, and thereafter the maladministration action was prosecuted as an original one under the style of Shinbaum, et al. v. First National Bank. Later, the bank was found to be insolvent and placed in, the hands of the Comptroller of the Currency of the United States for liquidation, and Charles S. Coffey, appellant, appointed receiver. · He was made a party to the Shinbaum suit which was removed by him to the United States District Court, where an agreed judgment was entered against the receiver for $500,000 on which the Comptroller declared a forty per cent dividend. The appellant filed an intervening petition in this action, claiming there should be credited on the dividend $111,564.25 mortgagor's defaulted interest, which the bank had not recovered, and which it had paid on participation certificates and $23,378.53 with accrued interest of $1,790.61 mortgagor's delinquent taxes and fire insurance premiums which the bank had paid. He tendered with his petition clipped coupons equal to the interest offset. The lower court dismissed the intervening petition.

The appellee claims the court is without jurisdiction because the rights of the certificate holders were being administered in the State Court of Tennessee and further the receiver has waived his right to offset because its subject was defensive in the original action. If these contentions are correct, it is unnecessary to consider other questions raised on the appeal.

The Court has jurisdiction. Compare Commonwealth Trust Co. v. Bradford, Receiver, 297 U.S. 613, 620, 56 S.Ct. 600, 602, 80 · L.Ed. 920; Commonwealth Trust Co. v. Atwood, 3 Cir., 78 F.2d 92.

[2, 3] The right of setoff was not precluded by the judgment. A defendant may elect to withhold a claim ·against a plaintiff, though defensive, if it be an independent cause of action not affected or impaired ' by a judgment against him. The facts on which the appellant based his setoff are not so intimately intertwined with the original action as to preclude him from setting up the claim as a defense to the judgment. Compare Merchants' Heat & Light Co. v. Clow & Sons, 204 U.S. 286, 290, 27 S.Ct. 285, '51 L.Ed. 488; Central Appalachian Co. v. Buchanan, 6 Cir., 90 F. 454; Holland v. Forcum-James Cooperage & Lumber Co., 154 Tenn. 174, 285 S.W. 569.

The First National Bank secured its real estate loans by straight mortgages and sold an interest in some of them to customers who desired investments. The bank, however, held the mortgages in its name, and collected interest and paid it to the persons entitled thereto. Under its method of doing business, no purchaser of a participation certificate knew what specific mortgage was pledged to secure his investment, and the security first pledged might be, and in many instances was, changed and others substituted.

The relationship between the bank and the participation certificate holders was of a hybrid nature, having some characteristics of agency, some of debtor and creditor and some of trust. Whatever the true relationship between the parties, all transactions between them are completed and it is impossible to return to the status quo. Under such circumstances, the principle of ultra vires becomes unimportant.

From the record in this case, it is clear that the bank was engaged in a profit making venture. It freely substituted one note and mortgage for another and was at all times in complete control and retained the legal title to all securities. Many . of the mortgages from which the coupons were clipped and sought to be used as an offset in this action had been in the possession of the bank for many years and a number of them .were put in the pool after default. The owners of par-

ticipation certificates were constantly changing and their rights and burdens cannot be measured by the rule applicable to the stockholders of a corporation or owners of a large bond issue on a single piece of property, but must be determined with relation to each underlying mortgage. The bank was under no obligation to its certificate holders to advance money to pay taxes, insurance or interest and they made no demand that it do so. Whether termed "trustee" or "agent" the bank occupied a trust relationship to them in the collection of interest on the mortgages and the other duties resting on it and its liability must be measured by the law applicable to trusteeship. The voluntary payments made by the bank from its own funds could not be applied as a credit against funds subsequently received from other mortgagors, because to permit such practice would relieve it of its duty as trustee or agent to account for and pay over income on property received in its trust or agency capacity.

■ It is an accepted rule of law that a trustee under a mortgage is entitled to be reimbursed for all expenditures authorized or contemplated by the mortgage or for preserving the trust property, for which he has a lien. Gisborn v. Charter Oak Life Insurance Company, 142 U.S. 326, 338, 12 S.Ct. 277, 35 L.Ed. 1029. Under this rule, the bank or its receiver would be entitled to a first lien for the payment of taxes and insurance on the specific property for which such payments were made where the mortgagor defaulted, but would not be entitled to a general claim against the owners of participation certificates.

■ The evidence discloses that the mortgages on the property on which the bank paid taxes or insurance were in the pool at the time the receiver was appointed in the state court but there is no evidence they were in the pool at the time of the payment of taxes or insurance. The bank daily shifted its own mortgages for those at the pool and the record is silent as to whether it took out of the pool, mortgages unimpaired by delinquent taxes or insurance and substituted therefor mortgages thus impaired. Under such a state of facts, the receiver is not entitled to a setoff on account of insurance and taxes.

■ There was no obligation resting on the bank to pay interest on the par-

ticipation certificates in advance of collections from mortgagors, and in doing so it was a volunteer, and the rule applies that where one demands money of another as a matter of right and the other with full knowledge of the facts upon which the demand is founded, pays it, he cannot recover the sum thus paid. He who receives money under such circumstances has the right to consider it his without dispute and so use it. It would be unjust and lead to confusion in business transactions if one who had acquiesced in the right by such voluntary payment, should be at liberty at any time within the Statute of Limitations, to recover.

The bank in advancing interest payments on these certificates desired to preserve an unimpaired market for its mortgage bonds. The certificate holders did not know that any of the mortgages were in default and that the bank was advancing interest on their certificates, until receivership proceedings were instituted. Had they been aware of the defaults they could have precipitated foreclosure and probably would have done so, in which event it is reasonable to assume that the sale of certificates would have been greatly diminished.

■ Equity requires that the bank and its receiver be subordinated to the certificate holders as to the specific security of underlying mortgages on which interest was paid in advance of collection. This salutary rule will remove the strong temptation to trustees to act for their own advantage to the detriment of the cestuis que trustent. Compare Ketchum v. Duncan, 96 U.S. 659, 675, 24 L.Ed. 868; First Trust Company v. Ricketts, 8 Cir., 75 F.2d 309; Commonwealth Trust Company v. Atwood, 3 Cir., 78 F.2d 92; In re Media Sixty-Ninth Street Trust Company, 329 Pa. 587, 197 A. 918, 115 A.L.R. 869; In re Nauman's Estate, 110 Pa.Super. 55, 167 A. 395; In re Klein's Estate, 326 Pa. 393, 190 A. 882; Martin v. Citizens' Bank & Trust Co., 94 Tenn. 176, 186, 28 S.W. 1097.

The appellee has collected on underlying mortgages $10,272.87 in excess of the amounts due participation certificate holders and the appellant is entitled to an offset in that amount. The decree of the District Court is modified as above indicated and, so modified, is affirmed. The costs will be divided.