### DUNN v. READING TRUST CO. et al.
### No. 7549.

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

Russell H. Yoder, of Reading, Pa., for appellant.

Randolph Stauffer, of Reading, Pa., for appellees.

Before MARIS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

A national bank became a trustee under a mortgage and sold the bonds to the public. Seven years after this transaction (1925–1932) the mortgagor defaulted in two successive installments of interest. The trustee bank followed the Micawber theory of the day and paid the overdue interest itself. Although with no assurance that such theory was shared by the bondholders, they were nevertheless left with rosy dreams of profitable property. The rude awakening followed upon the banking holiday and the insolvency of this bank.

The receiver now claims the repayment of these advances from the bondholders, their substituted trustee and the mortgagor's estate, and the declaration of a lien on the mortgaged property. The learned trial judge felt himself bound by certain decisions of the Pennsylvania courts.[1] Because of that feeling, he naturally did not stress the reasoning that may have controlled them. In spite of our satisfaction with his result, we believe that the subject may well receive some further mention.

The position of a trustee for bondholders has always been of the "nor good red herring" [2] variety. He partakes of the characteristics of both depositary

---

[1] Klein v. Adams, 31 Berks Co. L.J. 241, affirmed sub nom. Klein v. Dunn, 337 Pa. 480, 12 A.2d 56; Media-69th St. Trust Company's Trust Mortgage Pool Case, 329 Pa. 587, 197 A. 918, 115 A. L.R. 869, 872; Klein's Estate, 326 Pa. 393, 190 A. 882; Estate of Nauman, 110 Pa.Super. 55, 167 A. 395.

[2] 2 Jones, Bonds and Bond Securities, 4th Ed. 1935, § 1053.

and ordinary trustee.[3] His label inspires confidence and his indenture attempts excuse.[4] So his standard of conduct becomes loose[5] and requires legislation to give it rigidity.[6] In the case at bar, we think that the trustee-depositary may be held either for a breach of trust or by way of estoppel by misrepresentation. The breach of trust arises, of course, from an assumption of conflicting interests.[7] If the trustee expects to be subrogated to the bondholders' rights, its attempting to share the security with them is adverse. If the advances are to be considered loans, the resulting banker-customer's connection between the trustee and the mortgagor is antagonistic to the bondholders. Furthermore, the trustee would always be inclined to place more concern for the marketability of its bonds and its own repute as a judge thereof than the welfare of the bondholders.[8] If, on the other hand, the terms of the bond indenture here[9] or other considerations are felt to preclude a breach of trust, the estoppel seems plain. The erring trustee has not informed its bondholders of their danger and its concealment has brought about their injury.

We may assume that the national bank of the case at bar may invoke a legislative limitation on its power.[10] That limitation would seem inherent in the proscription against the guarantee of real estate mortgages.[11] The special capacity theory has been criticized[12] and perhaps modified.[13] At any rate, here also we think estoppel may be used against the plea of ultra vires. The bondholders can no longer make restitution.[14] It is true that the Supreme Court has favored the exemption of receivers from defenses and claims against their banks.[15] The reasons of policy therefor are reversed here. The cestuis and the investing public may be set off against the bank's depositors and creditors.

The judgment of the District Court is affirmed.

---

[3] Posner, Liability of the Trustee Under the Corporate Indenture, 42 Harvard Law Review 198; Posner, The Trustee and the Trust Indenture; A Further Study, 46 Yale Law Journal 737.

[4] McClelland and Fisher, Corporate Mortgage Bond Issues pp. 774 et seq.

[5] Marshall & Ilsley Bank v. Guaranty Inv. Co., 213 Wis. 415, 250 N.W. 862; Anderson v. Pennsylvania Hotel Co., 5 Cir., 56 F.2d 980; Hazzard v. Chase National Bank, 159 Misc. 57, 83–86, 287 N.Y.S. 541, 569–572.

[6] Trust Indenture Act, 15 U.S.C.A. § 77aaa et seq.

[7] 2 Jones, above cited, §§ 1042, 1053; McClelland and Fisher, above cited, p. 795.

[8] Klein v. Dunn, 337 Pa. 480, 485, 12 A.2d 56, 58, above cited; First Trust Co. of Lincoln v. Ricketts, 8 Cir., 75 F.2d 309, 312; First Trust Co. v. Carlsen, 129 Neb. 118, 124, 261 N.W. 333, 337.

[9] The terms in the case at bar do not appear in the record.

[10] Yonkers v. Downey, 309 U.S. 590, 60 S.Ct. 796, 84 L.Ed. 964.

[11] 12 U.S.C.A. § 24. If there is no enforceable obligation in return for the advances, an unauthorized gift of assets is indicated. It may be, however, that a claim against the mortgagor or a subordinate claim against the premises precludes this, although they may prevent recovery for other reasons.

[12] Stevens, A Proposal as to the Codification and Restatement of the Ultra Vires Doctrine, 36 Yale Law Journal 297.

[13] Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. ——, decided January 20, 1941.

[14] 1 Zollman, Banks and Banking §§ 196, 344, 5 Zollman, Banks and Banking § 3035; cf. Coffey v. Lawman, 6 Cir., 99 F.2d 245.

[15] Texas & P. Ry. v. Pottorf, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787.