59 F.3d 170
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Thomas J. GEIG, Plaintiff-Appellee,
v.
The MARCH COMPANY, Arthur Blasberg, Jr., Brimfield Inn
Associates, and Diversified Hotels, Defendants-Appellants.
 No. 94-3105.
 United States Court of Appeals, Sixth Circuit.
 June 22, 1995.
 
 Before: KENNEDY and MILBURN, Circuit Judges; and WISEMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants, the March Company ("TMC"), Arthur Blasberg, Jr., Brimfield Inn Associates ("Brimfield"), and Diversified Hotels Management Corporation ("Diversified"), appeal the default judgment entered against them in this action for damages under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. Sec. 1161 et seq.[1] On appeal, defendants assign three errors. First, defendants argue that the District Court abused its discretion by entering the default judgment against defendants. Second, defendants contend that the District Court lacked subject matter jurisdiction over this action because defendants TMC, Brimfield and Diversified were in receivership and under the exclusive jurisdiction of a state court in Massachusetts at the time this action was filed. Finally, Brimfield and Diversified argue that the District Court improperly denied their motion for joinder. For the following reasons, we reverse.
 
 I. Facts and Background
 
 2
 Plaintiff, Thomas J. Geig, brought this action on August 26, 1991 alleging that defendants had failed to advise him of his rights to continued health coverage pursuant to COBRA. On March 30, 1992, plaintiff filed an amended complaint adding Blasberg, in his official capacity as Receiver of TMC, and Diversified. COBRA, which amends the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001 et. seq., was enacted in 1986 in response to concerns about the growing number of Americans without access to health insurance. See Gaskell v. Harvard Cooperative Society, 3 F.3d 495, 498 (1st Cir. 1993). COBRA requires employers who sponsor ERISA health plans to allow qualified beneficiaries to continue their group health coverage after certain "qualifying events" that would otherwise result in termination of coverage. See 29 U.S.C. Sec. 1161(a).
 
 
 3
 Plaintiff was employed as Director of Sales at Holiday Inn in Kent, Ohio, which was owned and managed by defendants. After plaintiff left his job in April 1989, he was diagnosed with Crohn's Disease. Plaintiff brought this action alleging that as a result of defendants' failure to notify him of his rights under COBRA, he incurred substantial medical expenses.
 
 
 4
 Throughout this litigation, TMC and its subsidiaries have been in receivership. On August 5, 1991, the Superior Court of the Commonwealth of Massachusetts, Suffolk County placed TMC into receivership and appointed Blasberg as Receiver. See Agency Realty Corp. v. The March Company, Inc., Case No. 91-5193 (Suffolk Cty., Mass. August 5, 1991). The Superior Court issued an amended order on August 9, 1991, enjoining the institution or further prosecution of any suits against TMC or its subsidiaries without prior permission of the court.
 
 
 5
 On March 26, 1992, Blasberg filed a petition in the Superior Court to establish a bar date of May 5, 1992 for filing proofs of claims in the receivership proceedings. The Superior Court granted this petition by order dated March 26, 1992. On April 2, 1992, at the Court's direction, Blasberg sent Notice of Bar Date for Filing Proofs of Claims to the creditors of TMC, including plaintiff. The notice stated that if a proof of claim was not filed by the bar date, the receivership would be discharged from any liability and that the creditor would be forever barred from asserting the claim. On August 26, 1992, counsel for TMC sent a letter to plaintiff notifying him that his failure to comply with the proof of claim procedure precluded him from asserting the claim against TMC and its property and assets. On June 16, 1993, nunc pro tunc May 5, 1993, the Superior Court approved the Final Report and Plan of Distribution filed by Blasberg on February 11, 1993. The Final Report states that holders of claims who did not file proof "will be barred and TMC, the Receivership Estate and the Receiver will be discharged from any and all indebtedness or liability with respect to such claims."
 
 
 6
 Until plaintiff filed a motion for default judgment, defendants did not file an answer nor make an appearance in this action. On November 22, 1991, however, Blasberg had informed the District Court and plaintiff by letter that TMC was in receivership and that the receivership's limited cash flow did not permit it to enter a defense at that time. A copy of the Superior Court's order was attached. On August 30, 1993, plaintiff filed a motion for default judgment against defendants. Prior to entry of the default judgment, TMC and Blasberg filed a memorandum in opposition to plaintiff's motion and a motion for leave to respond to plaintiff's complaint. Brimfield and Diversified filed a motion for joinder in TMC's motion and memorandum. On December 21, 1993, the District Court denied the motions for joinder and leave to respond and entered a default judgment of $78,009.20.
 
 II. The Entry of Default
 
 7
 Defendants argue that the District Court abused its discretion by declining to set aside the default judgment. The District Court granted a default judgment in plaintiff's favor, finding that defendants "failed to show good cause why for two years, they never made any effort to appear in this case, if for no other reason than to seek dismissal in light of the alleged receivership proceedings."
 
 
 8
 Federal Rule of Civil Procedure 55(a) permits a trial court to enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. Pro. 55(a). Rule 55(c) permits a court to set aside an entry of default for good cause. Defendants' answer in opposition to the motion for default may be treated as a motion to set aside the default pursuant to Rule 55(c). See United Coin Meter v. Seaboard Coastline RR., 705 F.2d 839, 844 (6th Cir. 1983).
 
 
 9
 At the outset, we note that it is not clear whether the District Court's decision was rendered pursuant to Rule 55(c) or Rule 60(b), which permits a court to set aside a final judgment. It does not appear from the record that there was an entry of default before the judgment of default was entered. Although the standard under Rule 55(c) is more lenient, the same factors are analyzed under both Rule 55(c) and Rule 60(b). See Shepard Claims Service, Inc. v. William Darrah & Assoc., 796 F.2d 190, 193-94 (6th Cir. 1986). Moreover, regardless of whether we treat defendants' motion as under Rule 55(c) or under Rule 60(b), we conclude that the District Court abused its discretion.
 
 
 10
 "Judgement by default is a drastic step which should be resorted to only in the most extreme cases." United Coin Meter, 705 F.2d at 845. Although we review a district court's decision to set aside a default judgment for abuse of discretion, "[t]rials on the merits are favored in federal courts and a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." Id. at 846. This Court has identified three factors to consider when determining if there is good cause to set aside a default judgment: (1) whether the default was willful; (2) whether a set-aside would prejudice the plaintiff; and (3) whether the alleged defense is meritorious. Id. at 844.
 
 
 11
 We first examine whether defendants' default was willful or culpable. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." Shepard Claims, 796 F.2d at 194. There is no evidence in the record that defendants attempted to thwart this proceeding. Indeed, defendants were relying on an order of the Massachusetts court, dated August 9, 1991, which enjoined the institution or prosecution of claims against TMC. Nor did defendants recklessly disregard the effect of their conduct on this action. Defendants informed the plaintiff of the receivership proceedings and, by letter, the District Court. We do not suggest that district courts are required to give effect to correspondence. However, when considering culpability, we believe it should be considered.
 
 
 12
 Next, we must consider whether there is prejudice to the plaintiff. "Mere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment." United Coin Meter, 705 F.2d at 845. To be considered prejudicial, the delay must result in tangible harm such as lost evidence, discovery problems, or the opportunity for fraud. See Amernational Industries Inc. v. Action-Tungram Inc., 925 F.2d 970, 977 (6th Cir.), cert. denied, 501 U.S. 1233 (1991). Although the District Court held that plaintiff had been severely prejudiced by defendants' actions, the District Court did not identify any harm to the plaintiff besides delay. Nor has plaintiff identified any other prejudice. Although defendants did not file an appearance in this case, they did notify plaintiff about the receivership proceedings and the steps plaintiff needed to take to present his claim to the receivership court. Possible prejudice to the plaintiff because defendant did not participate in discovery can be remedied. The district court may condition the removal of the default on waiver of this right and restriction on duplicative discovery.
 
 
 13
 Finally, we must consider whether the claimed defense is meritorious. "In determining whether a defaulted defendant has a meritorious defense '[l]ikelihood of success is not the measure.' Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." United Coin Meter, 705 F.2d at 845 (quoting Keegel v. Key West & Caribbean Trading Co., Inc., 627 F.2d 372, 374 (D.C. Cir. 1980)). Defendants' defense of lack of jurisdiction--whether or not it is ultimately successful--clearly meets this standard.
 
 
 14
 This Court reviews matters of jurisdiction de novo. See In re Wolverine Radio Co., 930 F.2d 1132, 1137-38 (6th Cir. 1991), cert. dismissed, 112 S. Ct. 1605 (1992). Defendants contend that because TMC and its subsidiaries were in receivership under the authority of the Superior Court in Massachusetts, the Superior Court had exclusive jurisdiction over all actions against them. Defendants' argument is based upon the common law rule that when "a State Court has taken possession of or jurisdiction over property in an in rem or quasi in rem proceeding, the Federal Courts cannot exercise jurisdiction over the same property in such a way as to interfere with the orderly disposition of the litigation by the State Court." Jacobs v. DeShetler, 465 F.2d 840, 842 (6th Cir. 1972).
 
 
 15
 Defendants cite Barton v. Barbour, 104 U.S. 126 (1881), in which the Supreme Court held that a plaintiff could not bring a tort action against a railroad receivership without seeking leave of the receivership court. The Court held that the action against the receiver was in rem and would interfere with the receivership court's authority. Id. at 127-29. Later cases, however, have consistently held that "[t]he establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have." Morris v. Jones, 329 U.S. 545, 549 (1947). See also Coit Independence Joint Venture v. F.S.L.C., 489 U.S. 561, 575 (1989). In Riehle v. Margolies, 279 U.S. 218, 224 (1929), the Supreme Court distinguished between liquidating a claim, which does not interfere with the receivership court's authority, and distributing assets, which is the essence of the receivership court's authority:
 
 
 16
 [A]n order which results in the distribution of assets among creditors has ordinarily a twofold aspect. In so far as it directs distribution, and fixes the time and manner of distribution, it deals directly with the property. In so far as it determines, or recognizes a prior determination of, the existence and amount of the indebtedness of the defendant to the several creditors seeking to participate, it does not deal directly with any of the property. The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding in personam. Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him.
 
 
 17
 Plaintiff's COBRA action is a suit to establish the amount of a claim. As stated in Riehle, establishing the amount of a claim would not interfere with the Superior Court's authority because plaintiff would still be required to apply to the Superior Court of Massachusetts to collect the claim.
 
 
 18
 This conclusion, however, does not end the inquiry of the District Court's jurisdiction. It is not clear from the record whether TMC and its subsidiaries were dissolved when their assets were placed into receivership. The status of the receivership itself at the time the judgment was rendered is unclear. In certain circumstances dissolution of a corporation may operate "like death, as an abatement of the suit." See Riehle, 279 U.S. at 227. See also Pendleton v. Russell, 144 U.S. 640, 644-45 (1892). Accordingly, upon remand the District Court may fully examine its jurisdiction.[2]
 
 III. The Motion for Joinder
 
 19
 Finally, defendants Brimfield and Diversified argue that the District Court erred by denying their joinder motion. Brimfield and Diversified sought to join TMC's motion to respond to plaintiff's complaint and TMC's memorandum in opposition to the default judgment. We agree that the District Court erred by denying the motion. Our rulings today, therefore, apply equally to Brimfield and Diversified.
 
 IV. Conclusion
 
 20
 For the forgoing reasons, the default judgment against defendants is reversed. We remand to the District Court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Arthur Blasberg, Jr., is the Receiver of TMC. Diversified Hotels is a subsidiary of TMC. Brimfield is a limited partnership, to which TMC is a general partner
 
 
 [2]
 Additionally, defendants argue that the Superior Court's order, entered before the default judgment, is entitled to full faith and credit by the District Court. See 28 U.S.C. Sec. 1738. The Massachusetts order, dated June 16, 1993 nunc pro tunc May 5, 1993, discharged defendants "from any and all indebtedness or liability" to creditors. Because defendants did not raise this defense before the District Court, we need not address whether it constitutes a meritorious defense