**In re CITX CORPORATION, Debtor.**

**Gary Seitz, Chapter 7 Trustee, for CitX Corporation, Inc.,**

**v.**

**Lewis B. Freeman, Receiver of Professional Resources Systems International, Inc. a/k/a PRSI, Inc., Defendant.**

**Bankruptcy No. 01–19604F.
Adversary No. 03–0723.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 3, 2003.

---

Diana M. Dixon, Doylestown, PA, for CitX Corp.

Lee Harrington, Blank, Rome, Comisky, McCauley, Philadelphia, PA, Michael B.

Schaedle, Neal A. Jacobs, Philadelphia, PA, for Gary Francis Seitz.

Kevin P. Callahan, Philadelphia, PA, for United States Trustee.

Maurice R. Mitts and Eric F. Spade, Frey, Petrakis, Deeb, Blum, Briggs & Mitts, P.C., for Lewis B. Freeman, Receiver of Professional Resources Systems International, Inc. a/k/a PRSI, Inc., Defendant.

## MEMORANDUM

BRUCE I. FOX, Chief Judge.

The defendant, Lewis B. Freeman, has filed a motion to dismiss the above-captioned adversary proceeding pursuant to Fed. R. Bankr.P. 7012. The defendant maintains that this bankruptcy court has no subject matter jurisdiction.

This jurisdictional challenge is unusual in that the defendant does not argue that this proceeding is outside the scope of the bankruptcy jurisdictional statute–28 U.S.C. § 1334. Indeed, the defendant concedes that this proceeding is at least "related to" the underlying bankruptcy case within the meaning of section 1334(b).[1] Rather, the defendant contends that the *"Barton* Doctrine" renders him immune from suit in this court until the plaintiff obtains permission to sue from the Circuit Court of the 15th Judicial Circuit for Palm Beach County, Florida, the court that appointed him as the receiver of Professional Resources Systems International, Inc.[2]

The plaintiff-trustee counters that the *Barton* Doctrine is inapplicable to the

1. To the extent this is not a core proceeding, both parties have agreed that I may enter a final judgment in accordance with 28 U.S.C. § 157(c)(2).

2. Although not mentioned in his memorandum, defendant's counsel acknowledged at oral argument his belief that the statute of limitations has expired on some if not all counts of the complaint. If so, any attempt

by the plaintiff to obtain the consent of the Florida state court if this proceeding were dismissed might be futile.

For reasons to be addressed later in this memorandum, I agree with the defendant that some of the counts asserted in this proceeding are precluded by federal common law unless state court leave to proceed is granted.

claims asserted by him in this proceeding. Alternatively, he posits that federal bankruptcy law expressly authorizes this lawsuit and, therefore, trumps the *Barton* Doctrine.

■ The following relevant facts are either uncontested by the parties for the purpose of this motion or are the subject of judicial notice.[3]

## I.

■ Defendant Freeman was sued in his capacity as receiver of a corporation known as Professional Resources Systems International, Inc. ("PRSI"). He was originally appointed receiver on January 4, 2000 by the Circuit Court of the 15th Judicial Circuit for Palm Beach County, Florida at the request of the Florida Attorney General.[4] Motion to Dismiss, Ex. A.[5]

On January 13, 2000, the state court issued an order detailing the scope of this receivership. Among its terms, this order authorized Mr. Freeman to take possession and control of all of the assets of PRSI, *id.* ¶ 8, required him to: safeguard those assets, collect all sums due to PRSI, and bring suit on behalf of PRSI in any court of competent jurisdiction, *id.* ¶ 9, and directed him to establish a claims procedure by which creditors of PRSI could file claims for payment, which claims would be determined by the state court. *Id.* ¶ 9(j).

In the instant complaint, the chapter 7 trustee alleges that CitX Corporation ("CitX") was established in 1996 to provide Internet services to businesses. Complaint ¶ 5. PRSI, in turn, promised small businesses that it would create websites which would allow them to enter into on-line business transactions with their customers. *Id.* ¶ 6. In 1999, CitX and PRSI entered into contracts by which CitX would design and establish these promised websites. *Id.* ¶¶ 7–8.

In this proceeding, the plaintiff-trustee contends that PRSI was a "criminal enterprise" controlled by "organized crime," which never provided the promised websites, and whose officers, directors and "principals" have either been charged with or convicted of various crimes. *Id.* ¶¶ 10–14. Moreover, the trustee avers that certain individuals involved with CitX were involved in this criminal enterprise and that these two companies had officers and directors in common. *Id.* ¶¶ 19–20.

In order to avoid any limitations issues, I will stay prosecution of those counts.

**3.** I take judicial notice, under Fed.R.Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr.P. 9017), of the docket entries of this case, including the claims docket. *See Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi*, 1993 WL 69146, at *2 (N.D.Ill. 1993); *In re Paolino*, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); *see generally In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir.1995).

**4.** The Attorney General persuaded the state court that PRSI was involved in a scheme to defraud what the plaintiff estimates were about 60,000 individuals or entities.

**5.** A defendant seeking to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), incorporated by Fed. R. Bankr.P. 7012, is not bound solely by the facts alleged by the plaintiff in his complaint. *See, e.g., Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir.2003); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295–96 (10th Cir.2003); *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1302–03 (10th Cir. 2001). Here, the plaintiff does not contest the defendant's assertions that he is a state court appointed receiver, that the copies of the state court orders attached to his motion to dismiss are accurate and were duly entered, and that the plaintiff did not obtain state court approval before commencing this adversary proceeding.

The trustee also alleges that after Mr. Freeman became receiver of PRSI, he brought suit against CitX in the Pennsylvania Court of Common Pleas, Bucks County, which lawsuit was settled with a judgment entered against the debtor in February 2001 in the amount of $700,000.00. *Id.* ¶¶ 24–25. Thereafter, CitX paid $50,000.00 to Mr. Freeman prior to its July 2001 bankruptcy filing; moreover, CitX purportedly made post-bankruptcy transfers as well to the receiver. *Id.* ¶¶ 26–27.

In his complaint, the trustee asserts claims under the Bankruptcy Code for preferences (§ 547), improper postpetition transfers (§ 549), and fraudulent conveyances (§§ 544 and 548). For those claims, the trustee seeks a judgment and "immediate pay[ment]" from the Receiver, as well as disallowance of the Receiver's proof of claim in this case under section 502(d).[6] In addition, the trustee contends that PRSI controlled CitX and the activities of the two entities were so intermingled that any claims of PRSI in this bankruptcy case should be "equitably subordinated," that the assets and liabilities of the two companies should be "substantively consolidated," and that the PRSI funds in possession of Mr. Freeman be held in "constructive trust" so that CitX creditors may share in their distribution. Complaint ¶¶ 46, 58, 63.

Mr. Freeman, through his attorneys, has been an active participant in this bankruptcy case. For example, in August 2001, he filed a motion to convert the case from chapter 11 to chapter 7, *see* Docket entry # 26, which motion was granted after a hearing. He has filed a proof of claim in an amount greater than $800,000.00, claim # 46, and he has responded to a motion to sell CitX assets. *See* Docket entry # 84.

## II.

The so-called *"Barton* Doctrine" takes its name from the decision rendered in *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881). Mr. Barbour had been appointed equity receiver in Virginia state court to operate a railroad company. Thereafter, a railroad passenger, Ms. Barton, was injured and brought a tort action against the receiver in the District of Columbia. The Supreme Court held that, as a matter of federal common law, "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Id.,* 104 U.S. at 128. Without such leave of court, the other forum "had no jurisdiction to entertain [the] suit." *Id.* at 131.

The Court explained that its holding was necessary to uphold the fair administration of receivership property:

> If he has the right, in a distinct suit, to prosecute his demand to judgment without leave of the court appointing the receiver, he would have the right to enforce satisfaction of it. By virtue of his judgment he could, unless restrained by injunction, seize upon the property of the trust or attach its credits. If his judgment were recovered outside the territorial jurisdiction of the court by which the receiver was appointed, he could do this, and the court which appointed the receiver and was administering the trust assets would be impotent to restrain him. The effect upon the property of the trust, of any attempt to enforce satisfaction of his judgment, would be precisely the same as if his suit had been brought for the purpose of taking property from the possession of the receiver. A suit therefore, brought without leave to recover judgment

---

6. Mr. Freeman filed a proof of claim in this bankruptcy case on January 15, 2002, docket-ed as claim # 46, in the amount of $812,987.34.

against a receiver for a money demand, is virtually a suit the purpose of which is, and effect of which may be, to take the property of the trust from his hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property. We think, therefore, that it is immaterial whether the suit is brought against him to recover specific property or to obtain judgment for a money demand. In either case leave should be first obtained.

\* \* \* \* \* \*

If the court below had entertained jurisdiction of this suit, it would have been an attempt on its part of [sic] adjust charges and expenses incident to the administration by the court of another jurisdiction of trust property in its possession, and to enforce the payment of such charges and expenses out of the trust property without the leave of the court which was administering it, and without consideration of the rights and equities of other claimants thereto. It would have been an usurpation of the powers and duties which belonged exclusively to another court, and it would have made impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities.

*Id.* at 128–29, 136.

The Supreme Court soon restated this holding in *Porter v. Sabin,* 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815 (1893), adding considerations of comity to the concern of fair adjudication of property in the control of the receivership court that it had expressed in *Barton:*

When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate. The possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it.

It is for that court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. It may direct claims in favor of the corporation to be sued on by the receiver in other tribunals, or may leave him to adjust and settle them without suit, as in its judgment may be most beneficial to those interested in the estate. Any claim against the receiver or the corporation the court may permit to be put in suit in another tribunal against the receiver, or may reserve to itself the determination of; and no suit, unless expressly authorized by statute, can be brought against the receiver without the permission of the court which appointed him.

The reasons are yet stronger for not allowing a suit against a receiver appointed by a state court to be maintained, or the administration by that court of the estate in the receiver's hands to be interfered with, by a court of the United States, deriving its authority from another government, though exercising jurisdiction over the same territory. The whole property of the corporation within the jurisdiction of the court which appointed the receiver, including all its rights of action, except so far as already lawfully disposed of under orders of that court, remains in its custody, to be administered and distributed by it. Until the administration of the estate has been completed, and the receivership terminated, no court of the one government can, by collateral suit, assume to deal with rights of property

or of action constituting part of the estate within the exclusive jurisdiction and control of the courts of the other.

*Id.* at 479–80, 13 S.Ct. 1008 (citations omitted).

There was a dissent filed in *Barton* which maintained that a receiver's immunity from suit in another forum without leave of the appointing court should not exist whenever the receiver is operating a business and the plaintiff's claim arises from such operation. Congress was persuaded by this argument and modified *Barton's* common law pronouncements by enacting legislation in 1887 that allowed operating receivers to be sued for certain claims. *See, e.g., Texas & Pacific Railway Co. v. Cox,* 145 U.S. 593, 601–02, 12 S.Ct. 905, 36 L.Ed. 829 (1892); *McNulta v. Lochridge,* 141 U.S. 327, 330, 12 S.Ct. 11, 35 L.Ed. 796 (1891); *In re Commercial Financial Services, Inc.,* 252 B.R. 516, 526–27 (Bankr.N.D.Okla.2000). That statute, since modified, was the ancestor of current 28 U.S.C. § 959. The present statute states in relevant part:

> (a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

There is no dispute in this proceeding that Mr. Freeman was never empowered to operate the business of PRSI. There-

fore, the provisions of section 959(a) are inapplicable to justify this adversary proceeding if federal common law would otherwise preclude it. *See generally Carter v. Rodgers,* 220 F.3d 1249, 1254 (11th Cir. 2000), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 775, 148 L.Ed.2d 673 (2001); *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240–41 (6th Cir.1993).

As will be discussed, the nineteenth century federal common law limitation on suits against receivers remains partially viable today, although it is most often relied upon by bankruptcy trustees. *See, e.g., Lurie v. Blackwell,* 211 F.3d 1274 (Table), 2000 WL 237966 (9th Cir.2000); *Matter of Linton,* 136 F.3d 544 (7th Cir. 1998); *In re Lehal Realty Associates,* 101 F.3d 272 (2d Cir.1996); *In re DeLorean Motor Co.,* 991 F.2d at 1240; *Richman v. Batt,* 265 B.R. 416 (E.D.Pa.2001).[7]

Thus, I must consider whether the instant proceeding is barred by federal common law.

### III.

#### A.

■ The plaintiff-trustee, while not disputing that some common law restriction against suing equity receivers still exists, argues in response to the defendant's motion to dismiss that the federal common law requirement of obtaining leave from the appointing court prior to suing a state court receiver is either inapplicable in these circumstances or has been superceded by federal statutory law.

■ As noted earlier, 28 U.S.C. § 959(a) partially supercedes the restriction upon receivership lawsuits. In addition, 11

---

**7.** Apparently, some states have legislatively restricted suits against receivers, *see, e.g., Vitug v. Griffin,* 214 Cal.App.3d 488, 262 Cal. Rptr. 588 (1989), while others have made it a part of their own common law. *See, e.g., Wil-*

*dermuth v. Pious,* 21 A.D.2d 912, 251 N.Y.S.2d 837 (N.Y.App.Div.1964). Accordingly, some restriction against suing receivers in foreign fora seems to be a well-accepted part of the fabric of our jurisprudence.

U.S.C. § 543(b) requires a state court receiver to turn over property to a bankruptcy trustee which would be property of the estate. *See generally In re Si Yeon Park, Ltd.,* 198 B.R. 956 (Bankr.C.D.Cal.1996). Such a turnover requirement may undermine the *Barton* Doctrine to some degree. Neither statutory provision, however, is germane to this proceeding.

As mentioned above, the former statute is inapplicable because it is limited to receivers that operate businesses. The trustee concedes that Mr. Freeman was appointed solely as a liquidating receiver. The latter statute is inapplicable because its directives are addressed to "custodians"—a term defined by section 101(11) to include receivers—whose duties involve controlling property of the debtor for the benefit of the debtor's creditors. *See Matter of Miami General Hosp., Inc.,* 111 B.R. 363, 366 (S.D.Fla.1990) (holding that a receiver appointed for the parent corporation of the debtor was not a custodian of the debtor-subsidiary because the receiver was not appointed to take control of the debtor's assets for the benefit of the debtor's creditors); *see generally Matter of Cash Currency Exchange, Inc.,* 762 F.2d 542, 553 (7th Cir.) ("Congress defined the term [custodian, used in section 543] broadly to include third parties who have taken charge of the debtor's assets for the general benefit of creditors."), *cert. denied sub nom. Fryzel v. Cash Currency Exchange, Inc.,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). Thus, section 543 has been applied where a state court receiver is appointed for an entity and that same entity later becomes a debtor in a bankruptcy case. *See generally In re Kreisers, Inc.,* 112 B.R. 996 (Bankr.D.S.D.1990). Section 543 does not apply to the present situation: *viz,* a bankruptcy trustee is suing a creditor who is in a prior state court receivership, because that receiver is not a custodian of the debtor's property. *See Matter of Miami General Hosp., Inc.*

The trustee's alternative argument, while unpersuasive in its breadth, does afford some support for a portion of this lawsuit.

■ The trustee broadly contends that a receiver's common law protection from being sued in a non-appointing court only applies to claims which arose after the appointment of the receiver. The trustee, however, refers to no decision so holding, and there are cases to the contrary. *See Porter v. Sabin,* 149 U.S. at 473, 13 S.Ct. 1008 (recognizing that the claim at issue arose prior to the appointment of the receiver); *see also Riehle v. Margolies,* 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929) (holding that a party may prosecute a claim which arose prior to the appointment of the receiver but may not then execute upon the judgment); *cf. McNulta v. Lochridge,* 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796 (1891) (finding that the predecessor to section 959 is applicable to a claim arising from the operations of a predecessor receiver). Since federal common law is designed to protect property in the custody of the receivership court, such protection should apply whenever the claim arose.

Moreover, the plaintiff's contention overlooks that some of the claims asserted by the trustee in this proceeding—*i.e.,* the Bankruptcy Code claims—did arise after the receiver was appointed.

Nonetheless, the trustee's argument does place in question the scope of a receiver's immunity from suit in a foreign forum. For the reasons detailed below, I find Mr. Freeman's jurisdictional defense in this proceeding unsustainable in part because he overlooks that various decisions after *Barton* have narrowed its restriction against suing receivers in non-appointing fora and because his participation in this

bankruptcy case amounts to a waiver of some of his immunity from suit.

### B.

The justification for the constraint upon suing a receiver in a non-appointing forum, as enunciated in *Barton*, emphasized due regard for the receivership court's control over property.[8] Especially when state court appointed receivers are involved, the holding of *Barton* (and later in *Porter*) was based primarily upon the understanding that receivership property was in the control of the state court, and such control must be accorded deference by federal courts:

"Where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts." Such possession of the res by the state court disenabled the federal court from exercising any control over it..... The appropriate exercise of the discretion of a federal court of equity may require it to refuse even to adjudicate rights in specific property if the state court has already undertaken such a determination. Furthermore, the federal court may not "seize and control the property which is in the possession of the state court" nor interfere with the state court or its functions.

*Fischer v. American United Life Insurance Co.*, 314 U.S. 549, 554–55, 62 S.Ct. 380, 86 L.Ed. 444 (1942) (quoting *Lion Bonding & Surety Co. v. Karatz*, 262 U.S. 77, 88–89, 43 S.Ct. 480, 67 L.Ed. 871 (1923)

and *Waterman v. Canal–Louisiana Bank & Trust Co.*, 215 U.S. 33, 44, 30 S.Ct. 10, 54 L.Ed. 80 (1909)) (internal citations omitted). Thus, the Third Circuit Court of Appeals noted many years ago:

A federal court cannot reach into the state court and take the res or enforce a right to specific property in possession of its receiver or trustee, except upon application to the court which appointed him.

*Commonwealth Trust Co. of Pittsburgh v. Atwood*, 78 F.2d 92, 94 (3d Cir.1935), *aff'd sub nom. Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920 (1936); *accord Geig v. March Co.*, 59 F.3d 170 (Table), 1995 WL 376717, at *4 (6th Cir.1995).

Although this common law deference in favor of the court with prior custody of the property has remained unchanged since *Barton* (and *Porter*), *Barton* also held that a lawsuit in a non-appointing forum which was designed to fix the existence and amount of a claim against the entity in receivership was tantamount to execution upon the property held in receivership and so invalid. In cases decided after *Barton*, however, the Supreme Court explained that there were two separate components to the receivership court's supervision of property under its control: liquidation of claims against the property and distribution of property to satisfy allowed claims according to the appropriate priority. *See, e.g., Riehle v. Margolies*, 279 U.S. at 224, 49 S.Ct. 310, 73 L.Ed. 669 (1929). The Supreme Court explained that the federal

---

8. More recently, some courts have added a common law interest in protecting a trustee or receiver "from unjustified personal liability for acts taken within the scope of his official duties." *In re Lehal Realty Associates*, 101 F.3d at 276. Without such protection, it may be more difficult "to find competent people to appoint as trustee." *Matter of Linton*, 136

F.3d at 545. Moreover, the restriction permits the appointing court to oversee "more effectively" the conduct of receivers and trustees. *Id.*

This adversary proceeding does not run afoul of this concern. Mr. Freeman is not being sued for any alleged misconduct; nor is any liability sought against him individually.

common law restriction upon suits against receivers in non-appointing courts was actually designed to protect only the latter component.

In *Riehle*, the Court addressed whether a state court could validly fix a claim against an entity in receivership when the state court action commenced prior to the receivership but judgment was entered after the receiver was appointed. In those circumstances, and without discussing *Barton*, the Supreme Court upheld the state court judgment:

> [A]n order which results in the distribution of assets among creditors has ordinarily a twofold aspect. In so far as it directs distribution, and fixes the time and manner of distribution, it deals directly with the property. In so far as it determines, or recognizes a prior determination of, the existence and amount of the indebtedness of the defendant to the several creditors seeking to participate, it does not deal directly with any of the property. The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding in personam. Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him. But the judgment of the state court does not purport to deal with the property. The sole question involved there was the existence and amount of Margolies' claim against the corporation, and the sole question involved here is the proof of that claim. There is no inherent reason why the adjudication of the liability of the debtor in personam may not be had in some court other than that which has control of the res. It is only necessary that in the receivership proof of the claim be made in an orderly way, so that it may be established who the creditors are and the amounts due them.

*Id.* at 224, 49 S.Ct. 310 (citation omitted).

Although the Court in *Riehle* limited its holding—that non-appointing courts could properly decide the amounts of claims against entities in receivership—to lawsuits commenced prior to the appointment of a receiver, *id.* at 225, 49 S.Ct. 310, the Seventh Circuit Court of Appeals soon held that there was no "logical basis" to constrain the *Riehle* holding to pre-receivership lawsuits. In *Chicago Title & Trust Co. v. Fox Theatres Corporation*, 69 F.2d 60 (2d Cir.1934), the appellate court explained:

> It has long been accepted practice for the receivership court, in appropriate cases, to grant permission to liquidate a claim by suit in another tribunal, and it has commonly been supposed that such permission was a prerequisite to the suit. A dictum in *Porter v. Sabin*, may be construed to that effect.

> But the recent decision in *Riehle v. Margolies* casts serious doubt upon the correctness of that dictum. There it was held that an action pending in a state court when the federal receivership suit was filed could not be stayed, and that the judgment subsequently rendered therein was res judicata as to the amount of the claim when proved in the receivership. It is true that the opinion expressly leaves open the question whether such a judgment would be conclusive if recovered in an action commenced after the receivership. We are unable, however, to see any logical basis for a distinction. *The theory of the decision is, as already stated, that the liquidation of a claim in personam by another court is not part of the distribution of assets.* Upon that theory, what difference can it make whether the action is pending?

*Id.* at 61 (citations omitted) (emphasis added).

The Second Circuit then concluded that a state court lawsuit filed after an equity receiver had been appointed in federal district court could properly liquidate a claim against that receivership entity:

> Since liquidation of a debt does not directly deal with distribution, a suit seeking such liquidation does not interfere with the jurisdiction of the receivership court, and hence cannot be enjoined. If the receivership court would have no ground to enjoin prosecution of such a suit, we see no necessity for obtaining its leave to commence it. Such we believe to be the necessary result of *Riehle v. Margolies* .... But subject to the possibility that the judgment recovered may be too late to be proved as a claim in the receivership, we see no reason why a creditor may not sue the receivership defendant in a state court, if he so desires, and without first obtaining leave from the receivership court.

*Id.* at 62.

Citing to *Riehle* and *Fox Theatres Corp.,* the Supreme Court in *Morris v. Jones,* 329 U.S. 545, 549, 67 S.Ct. 451, 91 L.Ed. 488 (1947), echoed their pronouncements in upholding a Missouri judgment against an Illinois liquidator:

> As pointed out in *Riehle v. Margolies,* ... the distribution of assets of a debtor among creditors ordinarily has a "twofold aspect." It deals "directly with the property" when it fixes the time and manner of distribution. No one can obtain part of the assets or enforce a right to specific property in the possession of the liquidation court except upon application to it. But proof and allowance of claims are matters distinct from distribution. They do not "deal directly with any of the property." "The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding in personam." The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have.
>
> *One line of cases holds that where a statutory liquidator or receiver is appointed, the court taking jurisdiction of the property draws unto itself exclusive control over the proof of all claims. But the notion that such control over the proof of claims is necessary for the protection of the exclusive jurisdiction of the court over the property is a mistaken one.*

*Id.* at 548–49, 67 S.Ct. 451 (citations and footnote omitted) (emphasis added).

The Third Circuit Court of Appeals, relying in part upon *Riehle,* drew a similar distinction between the proper fixing of a claim against receivership property by the non-receivership court and the invalid assertion of control over receivership property. In *Commonwealth Trust Co. of Pittsburgh v. Atwood,* 78 F.2d 92 (3d Cir.1935), the Third Circuit determined that a federal court had the power to fix a claim "against a mortgage trust being administered by a state court." *Id.* at 94.

> It is certain that, so far as the res of the estate now being administered by the Orphans' Court are concerned, the jurisdiction of that court is exclusive. A federal court cannot reach into the state court and take the res or enforce a right to specific property in possession of its receiver or trustee, except upon application to the court which appointed him. *Riehle v. Margolies,* 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 .... It is likewise certain that a federal district court, on jurisdiction otherwise shown, as di-

versity of citizenship or, as in this case, liquidation of a national bank, may establish a claim constituting the basis of a right to participate in the distribution of property in the possession of another court. The judgment of the federal court does not in such case purport to deal with property. It deals solely with the existence and amount of a claim, *Riehle v. Margolies* which when established by decree takes its share of the estate as administered by the probate court.

*Id.* at 94 (citations and quotations omitted).

In further support of this distinction is *Fischer v. American United Life Insurance Co.*, 314 U.S. 549, 62 S.Ct. 380, 86 L.Ed. 444 (1942). There, the Supreme Court held that a federal district court had the power to determine a dispute among state court receivers from Iowa, Texas and Michigan "as respects the title to and the right to administer certain assets of the company in the possession of the Iowa receiver." *Id.* at 551, 62 S.Ct. 380.

Where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. Such possession of the res by the state court disenabled the federal court from exercising any control over it. But a determination of the issues in this controversy does not necessarily involve a disturbance of the possession or control of the Michigan and Texas courts over the property in their possession. [A] state court may properly adjudicate rights in property in possession of a federal court and render any judgment not in conflict with that court's authority to decide questions within its jurisdiction and to make effective such decisions by its control of the property. The same procedure may be followed by a federal court with respect to property in the possession of a state court. Furthermore, the federal court may not seize and control the property which is in the possession of the state court nor interfere with the state court or its functions. Short of that, however, the federal court may go.

*Id.* at 554–55, 62 S.Ct. 380 (citations, quotations and footnote omitted).

In light of these decisions, the Sixth Circuit Court of Appeals recently upheld a judgment rendered in the District Court for the Northern District of Ohio against a company which was the subject of a Massachusetts state court receivership. *Geig v. March Co.*, 59 F.3d 170 (Table), 1995 WL 376717 (6th Cir.1995). It rejected the proffered defense of the *Barton* Doctrine in light of the evolution of common law:

Defendants contend that because TMC and its subsidiaries were in receivership under the authority of the Superior Court in Massachusetts, the Superior Court had exclusive jurisdiction over all actions against them. Defendants' argument is based upon the common law rule that when "a State Court has taken possession of or jurisdiction over property in an in rem or quasi in rem proceeding, the Federal Courts cannot exercise jurisdiction over the same property in such a way as to interfere with the orderly disposition of the litigation by the State Court." *Jacobs v. DeShetler*, 465 F.2d 840, 842 (6th Cir.1972).

Defendants cite *Barton v. Barbour*, 104 U.S. 126[, 26 L.Ed. 672] (1881), in which the Supreme Court held that a plaintiff could not bring a tort action against a railroad receivership without seeking leave of the receivership court. The Court held that the action against the receiver was in rem and would interfere with the receivership court's authority. *Id.* at 127–29. Later cases, however,

have consistently held that "[t]he establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have." *Morris v. Jones,* 329 U.S. 545, 549[, 67 S.Ct. 451, 91 L.Ed. 488] (1947) . . . .

Plaintiff's COBRA action is a suit to establish the amount of a claim. As stated in *Riehle,* establishing the amount of a claim would not interfere with the Superior Court's authority because plaintiff would still be required to apply to the Superior Court of Massachusetts to collect the claim.

*Id.* at *4–*5.

■ Therefore, to the extent that the trustee's adversary proceeding against Mr. Freeman merely seeks a determination whether the trustee holds a valid claim against the entity in receivership and, if so, the amount of that claim, federal common law does not require the trustee to first obtain the consent of the Florida state court before initiating such a lawsuit in this federal forum. Conversely, while the fixing of the claim against the receivership property is permissible, "collection of the judgment is another matter." *Chicago Title & Trust Co. v. Fox Theatres Corporation,* 69 F.2d at 62. Thus, to the extent the trustee's claims in this proceeding seek recovery from receivership property or seek to obtain some control over that property, then federal common law would restrict such relief. *See Riehle v. Margolies,* 279 U.S. at 224, 49 S.Ct. 310 ("Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him.").

## C.

One reaches a similar conclusion due to the receiver's activities in this chapter 7 bankruptcy case.

As just discussed, one of the holdings in *Barton*—that a lawsuit attempting to fix a claim against receivership property was tantamount to a prohibited attempt at execution upon the property—was overruled by later Supreme Court decisions. Another of its holdings—that a receiver's immunity from suit without leave of the appointing court is an issue of subject matter jurisdiction—has also been modified.

In general, the requirement of subject matter jurisdiction is not waivable in federal court, and its absence may be raised at any time in the litigation. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701–02, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 76–77 (3d Cir.2003). Therefore, if there were truly a subject matter jurisdictional bar against suing a receiver without first obtaining leave of the appointing court, that issue could be raised at any time and could not be waived.

Clearly, certain state courts view the immunity of an equity receiver to suit in a non-appointing court as a defense which may be waived—indeed, waived simply by implication. For example, two Florida state court decisions hold that a receiver's participation in litigation constitutes a implied waiver of any immunity the receiver may have had from suit. *Moss v. Ten Associates,* 524 So.2d 480, 481 (Fla.Dist.Ct. App.1988); *Colburn v. Highland Realty Co.,* 153 So.2d 731, 735 (Fla.Dist.Ct.App. 1963). The Massachusetts Supreme Court has reached a similar conclusion:

The rule, however, in this Commonwealth is that the failure to obtain permission to bring an action to establish a debt or a liability that does not interfere

with the property in the possession of the receiver or its operation or management by him is deemed an irregularity that may be waived by the receiver. *Robinson v. Trustees of New York, New Haven & Hartford Railroad Co.,* 318 Mass. 121, 129–30, 60 N.E.2d 593 (1945); *see also Ostrowski v. Miller,* 226 Cal. App.2d 79, 83–84, 37 Cal.Rptr. 790 (Dist. Ct.App.1964).

Insofar as federal courts are concerned, the First Circuit Court of Appeals in *Smith v. American Industrial Research Corp.,* 665 F.2d 397, 401 (1st Cir.1981), accepted that a receiver may waive, in part, his common law restriction against suit by not raising the issue below. He cannot, however, cede control over the assets under control of the receivership court without its prior consent. Thus, the First Circuit invalidated the portion of a district court order that required immediate and priority payment from assets held by a receivership court. *Id.* at 400.

> At the same time, we see no reason to set aside any other part of Judge Tauro's judgment. It is true that the judgment orders that the Smith plaintiffs recover $158,000 not only from the AIRCO defendants, but also from Bickford "as he is Receiver of the assets." But the receiver does not object to that part of the order. He stated before Judge Tauro that "our complaint, your honor, with the judgment that was entered in this case is not that you entered judgment for these plaintiffs in a certain amount or even that judgment was entered against the receiver ...." Rather, his complaint is that he is ordered to satisfy the Smith plaintiffs' judgment first, and entirely, out of the receivership assets. The receiver correctly assumes that the other portions of Judge Tauro's order do not prevent Judge Murray from weighing the claims of others together with the Smith plaintiffs' claims and judgment in determining how the AIRCO defendants' assets will finally be distributed.

*Id.* at 401 (footnote omitted) (alteration in original).

Thus, the immunity of a receiver from suit in a non-appointing court, to the extent it is considered jurisdictional, appears to be waivable in a manner perhaps similar to Eleventh Amendment immunity. *See generally In re Hechinger Investment Co. of Delaware, Inc.,* 335 F.3d 243 (3d Cir. 2003):

> As noted above, the Taxing Authorities claim that the Trust's motions seeking the declarations issued by the Bankruptcy Court were "suits ... commenced or prosecuted against one of the United States" within the meaning of the Eleventh Amendment. The Supreme Court has stated that where a defendant successfully demonstrates that the Eleventh Amendment precludes a suit, the court in which the plaintiff filed the action lacks subject matter jurisdiction over that action. *See Seminole Tribe v. Florida,* 517 U.S. 44, 64[, 116 S.Ct. 1114, 134 L.Ed.2d 252] (1996) (stating that the Eleventh Amendment stands "for the constitutional principle that state sovereign immunity limit[s] the federal courts' jurisdiction under Article III"); *Blake v. Kline,* 612 F.2d 718, 721 (3d Cir.1979) ("The eleventh amendment has been interpreted to bar jurisdictionally the federal courts from entertaining suits for damages when a state is the real party in interest."). When subject matter jurisdiction is at issue, a federal court is generally required to reach the jurisdictional question before turning to the merits.
>
> Eleventh Amendment immunity, however, has features that are atypical of doctrines that divest federal courts of

subject matter jurisdiction. While "no action of the parties can confer subject-matter jurisdiction upon a federal court," *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702[, 102 S.Ct. 2099, 72 L.Ed.2d 492] (1982), a state may waive its Eleventh Amendment immunity. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238[, 105 S.Ct. 3142, 87 L.Ed.2d 171] (1985) ("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."). Similarly, while a federal court is obligated to consider whether it possesses subject-matter jurisdiction even if the issue is not raised by the parties, a federal court need not address the issue of sovereign immunity if neither party brings it to the attention of the court. *See Wisconsin Dep't. of Corrections v. Schacht,* 524 U.S. 381, 389[, 118 S.Ct. 2047, 141 L.Ed.2d 364] (1998) ("[T]he Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The state can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it.") (internal citations omitted). *Id.* at 248–49 (citations omitted) (alterations in original).

As mentioned at the outset, the defendant-receiver, Mr. Freeman, has been an active participant in this bankruptcy case. He sought the appointment of the chapter 7 trustee; he has responded to motions filed by other parties; and he has filed his own proof of claim in an amount in excess of $800,000.00.

■ It has long been understood that a party filing a proof of claim in a bankruptcy case subjects itself to the equitable power of the bankruptcy court and trig-gers the allowance of claims process. *E.g., Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (and cases cited therein). Thus, by filing a proof of claim, a state government has been held to have waived its Eleventh Amendment immunity. *See, e.g., Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (waiver regarding the allowance of the state's claim); *In re Burke,* 146 F.3d 1313 (11th Cir.1998) (waiver concerning the allowance of claims against the state involving the same transactions and occurrences), *cert. denied sub nom. Georgia Department of Revenue v. Burke,* 527 U.S. 1043, 119 S.Ct. 2410, 144 L.Ed.2d 808 (1999); *In re Harleston,* 275 B.R. 546 (9th Cir. BAP 2002) (waiver regarding a determination of issues tied to the claims adjudication process), *aff'd,* 331 F.3d 699 (9th Cir.2003).

Similarly, the Financial Institution Reform, Recovery and Enforcement Act of 1989 (referred to as "FIRREA") contained a statutory provision which deprived courts of subject matter jurisdiction—until a claimant exhausted its administrative remedies—over actions against receivers for failed financial institutions. 12 U.S.C. § 1821(d)(13)(D). *See, e.g., FDIC v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3d Cir.1991); *In re W.J.P. Properties,* 149 B.R. 604 (Bankr.C.D.Cal.1992). Despite that statutory prohibition, the receivers could waive their immunity from suit by filing a proof of claim in a bankruptcy case. *See In re Best Products Co., Inc.,* 1994 WL 141970 (S.D.N.Y.1994); *In re Parker North American Corp.,* 148 B.R. 925 (C.D.Cal.1992), *aff'd,* 24 F.3d 1145 (9th Cir.1994); *In re Continental Financial Resources, Inc.,* 149 B.R. 260 (Bankr. D.Mass.1993), *aff'd,* 154 B.R. 385 (D.Mass. 1993).

Accordingly, the participation of defendant Freeman in this bankruptcy case,

particularly his filing of a proof of claim, constituted a waiver of any immunity from suit in this forum which he may have possessed (absent leave of the appointing court in Florida), but only insofar as it concerns the allowance or disallowance of his claim or the adjudication of claims against him which are related to the claim he asserted.

## IV.

■ In this adversary proceeding, the plaintiff-trustee has raised seven counts. For purposes of this jurisdictional defense, each of the counts must be considered separately. *See Halper v. Halper*, 164 F.3d 830, 838–39 (3d Cir.1999) (finding that the bankruptcy court's subject matter jurisdiction over a multi-count complaint should be determined on a claim by claim basis).

Count I asserts that preferential transfers were made under section 547(b). Count II, relying upon section 549(a), maintains that avoidable post-bankruptcy transfers were made. Count III alleges that prepetition fraudulent transfers occurred under Pennsylvania law, and relief is sought under section 544. Count IV is similar to count III, but contends that the conveyances were fraudulent under section 548. As to these four counts, the plaintiff-trustee seeks avoidance of the challenged transfers, the entry of judgment equal to the value of the transfers made pursuant to section 550(a), and the disallowance of the receiver's claim against CitX under section 502(d)[9] to the extent that the receiver does not pay the judgment award.

These four counts—which essentially attempt to fix a claim against the receivership property and which attempt to disallow the receiver's claim—seek relief which does not implicate the receivership court's control of the assets of PRSI. *See Commonwealth Trust Co. of Pittsburgh v. Atwood,* 78 F.2d at 92; *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 69 F.2d at 60.

To the extent that some common law immunity did exist against these four counts, by filing his own claim in this bankruptcy case, the receiver has submitted to this court's jurisdiction over disputes concerning the allowance and disallowance of that claim. Such disputes, especially in light of section 502(d), include preference and fraudulent conveyance actions. *See generally Langenkamp v. Culp*, 498 U.S. at 44, 111 S.Ct. 330; *In re Best Products Co., Inc.*, 1994 WL 141970; *In re Parker North American Corp.*, 148 B.R. at 925.

If the trustee is successful in obtaining a judgment on counts I through IV, I appreciate that federal common law appears to preclude his execution upon that judgment without leave of the Florida State court. *See Smith v. American Industrial Research Corp.*, 665 F.2d at 400 (holding that an order from a non-appointing court requiring the receiver to immediately pay the judgment amount was invalid); *Commonwealth Trust Co. of Pittsburgh v. At-*

---

9. Section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

Therefore, if a creditor has received an avoidable preferential transfer or fraudulent conveyance, its claim will be disallowed until the creditor has repaid the estate. *See* 4 *Collier on Bankruptcy* ¶ 502.05 (L. King et al. eds., 15th ed. rev.2003).

*wood,* 78 F.2d at 95–96 (finding that a federal court order directing a state court appointed fiduciary to pay a claim was improper); *Chicago Title & Trust Co. v. Fox Theatres Corp.,* 69 F.2d at 62 (suggesting that the execution upon a judgment against the entity in receivership would be prohibited). This limitation, however, does not deprive this bankruptcy court of jurisdiction to determine these claims. It would simply require the trustee to apply to the Florida state court for payment of his claim along with the other allowed creditors of PRSI.

Therefore, Mr. Freeman's motion to dismiss these four counts on the basis of lack of jurisdiction—because leave of the Florida state court to proceed had not been sought nor granted—will be denied.

■ The three remaining counts in the complaint appear to seek relief which transgresses the control over PRSI property which is now properly vested in the Florida state court.

■ Count V refers to "equitable subordination," which is a cause of action recognized in bankruptcy cases under section 510(c). If a claim of a creditor is equitably subordinated, then the claim, although allowed, is reduced in priority and is paid only after other allowed claims—typically, the claims of general, unsecured creditors—are repaid in full. *See In re Adler, Coleman Clearing Corp.,* 277 B.R. 520, 563 (Bankr.S.D.N.Y.2002). As the disallowance of a claim submitted by a receiver to a bankruptcy court would not violate federal common law, the reduction in its priority is also within my jurisdiction. *Cf. In re Continental Financial Resources, Inc.,* 149 B.R. at 260 (holding that a bank receiver, by filing a claim, permits challenge to the secured portion of its claim).

In Count V, however, the trustee actually does not seek to subordinate the receiv-er's allowed claim in this bankruptcy case. Rather, the relief he requests is that "the liabilities of CitX are imputed to PRSI" and "CitX should be afforded the value of the assets of PRSI." Complaint ¶¶ 45–46. In his Wherefore clause, the trustee prays for an "[o]rder[ ] that CitX become equitably subordinate to the assets of PRSI and that the liabilities of CitX are imputed to PRSI." *Id.* ¶ (g).

The relief prayed for in Count V should be viewed in conjunction with that sought in Counts VI and VII. In Count VI, the trustee seeks to "substantively consolidate" the assets and liabilities of CitX and PRSI. And in Count VII, the trustee demands that a "constructive trust" be declared over the assets of PRSI for the benefit of the CitX creditors. In the Wherefore clause, the trustee seeks an order of "substantive consolidation of CitX and PRSI and [creation of] an [sic] constructive trust for the benefit of the creditors of CitX." *Id.* ¶ (h).

■ Reading counts V through VII together, I conclude that the trustee does not seek to equitably subordinate—*i.e.,* reduce the priority of—the receiver's allowed claim in this bankruptcy case. Instead, he is directly challenging the receiver's control over PRSI property—as authorized by the state court of Florida—by maintaining that PRSI and CitX should be treated as one entity, presumably with the assets of that consolidated entity under the control of this court—given 28 U.S.C. § 1334(e), which provides the bankruptcy court with exclusive jurisdiction over all property of the debtor. *See, e.g., In re Simon,* 153 F.3d 991, 996 (9th Cir.1998) (recognizing that 28 U.S.C. § 1334(e) provides "exclusive *in rem* jurisdiction over all property of the [bankruptcy] estate"), *cert. denied sub nom. Hong Kong and Shanghai*

*Banking Corp., Ltd. v. Simon*, 525 U.S. 1141, 119 S.Ct. 1032, 143 L.Ed.2d 41 (1999).[10]

Federal common law deprives me of the power to grant such relief, absent the consent of the Circuit Court of the 15th Judicial Circuit for Palm Beach County, Florida. As Mr. Freeman fairly argues, the relief sought by the trustee in these three counts could disadvantage the other creditors of PRSI. Thus, it will be up to the appointing court for the PRSI receiver to determine whether the relief sought by the trustee in counts five through seven should be heard in this court.

Rather than dismiss those three counts at this time, however, I shall stay temporarily any determination of those three claims and grant the trustee a limited opportunity to obtain state court leave to proceed. *See Matter of NNLC Corp.*, 136 B.R. 611 (Bankr.D.Conn.1992) (holding that an adversary proceeding against a bank receiver is stayed pending exhaustion of administrative remedies); *see also Matter of Linton*, 136 F.3d at 545 (recognizing that the state court suit has "lain dormant pending final action on the motion for leave").

An appropriate order shall be entered.

**10.** 28 U.S.C. § 1334(e) provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." This provision affords a bankruptcy court exclusive control over property belonging to the debtor, *see, e.g., In re Modern Boats, Inc.*, 775 F.2d 619 (5th Cir.1985); *In re Newport Creamery, Inc.*, 293 B.R. 293 (Bankr. D.R.I.2003), and this exclusive jurisdiction is transferred to the bankruptcy court when the bankruptcy case is referred by the district court under 28 U.S.C. § 157. *See In re Colonial Realty Co.*, 1991 WL 487192, at *1 (D.Conn.1991), *aff'd*, 980 F.2d 125 (2d Cir. 1992).

Subsection 1334(e) must be contrasted with section 1334(b). This latter subsection states in relevant part: "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Thus, bankruptcy courts do not have exclusive jurisdiction over adversary proceedings, and such matters may be heard in a non-bankruptcy forum. *See, e.g., Quality Tooling, Inc. v. United States*, 47 F.3d 1569, 1573 (Fed.Cir. 1995).

These two provisions are reconciled by recognizing that this grant of exclusive bankruptcy court jurisdiction is only *in rem*. As one court explained:

> While at first blush it might appear that if an action involves property of the estate, a federal forum … is the only proper forum for adjudication of claims to such property, 28 U.S.C. § 1334(e) more properly denotes a grant by Congress of *in rem* jurisdiction over property of the debtor as of the commencement of the case and over property of the estate. Section 1334(e) must be harmonized with the provisions of § 1334(b) granting non-exclusive jurisdiction over matters "arising under," "arising in," and "related to" bankruptcy and/or bankruptcies. An action, in personam, that seeks to establish personal liability of the debtor on a claim, but which is not specifically targeted to ownership of, or rights in and to, property of the estate does not fall within this subsection. Thus, unless an action involves the actual recovery of property of the estate, rather than reparations paid for damages suffered, the action may proceed in state court without offending the exclusivity provision.

*In re AG Industries, Inc.*, 279 B.R. 534, 539 (Bankr.S.D.Ohio 2002) (citation and quotations omitted); *accord, e.g., Bank United v. Manley*, 273 B.R. 229, 247–49 (N.D.Ala.2001); *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 781–82 (Bankr.M.D.La.2001).

Thus, the claims raised by the trustee in this proceeding fall within the non-exclusive jurisdiction under section 1334(b). But were the trustee to prevail on certain of his claims and the assets of PRSI determined to be property of CitX, then the exclusive jurisdiction of section 1334(e) would place that property in control of this court. *See generally* 11 U.S.C. § 543.

## ORDER

AND NOW, this 3rd day of November 2003, for the reasons stated in the accompanying memorandum, it is hereby ordered that the defendant's motion to dismiss is denied.

It is further ordered that the fifth, sixth and seventh claims raised by the plaintiff in his complaint are stayed for 90 days from the date of this order so that the plaintiff may seek leave from the Circuit Court of the 15th Judicial Circuit for Palm Beach County, Florida to prosecute them.

The plaintiff shall report to this court within 90 days whether permission to prosecute these claims has been granted. If not, counts five, six and seven may be dismissed.